UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JAMES PUCCIARELLI; and SALVATORE
ISOLDA, individually and on behalf of all others
similarly situated,

                       Plaintiffs,

           - against -

LAKEVIEW CARS, INC. d/b/a CLOVE LAKE
CARS; AFRIM TAHIROVIC; and GONI
TAHIROVIC, jointly and severally,

                       Defendants.
-------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

**MEMORANDUM AND ORDER**
16-CV-4751 (RRM) (RER)

## INTRODUCTION

On August 24, 2016, plaintiff James Pucciarelli commenced this action pursuant to the

Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law

(the "NYLL") alleging, *inter alia*, that defendants failed to pay an estimated $150,000 in

overtime wages. (Compl. (Doc. No. 1).) On October 3, 2016, Salvatore Isolda filed a "Consent

to Become Party Plaintiff" letter. (Consent Letter (Doc. No. 11). On November 9, 2016, the

parties appeared before Magistrate Judge Ramon E. Reyes, who referred the case for mediation.

(*See* 11/09/2016 Minute Entry). Following mediation, the parties indicated that they settled this

action. (*See* 1/05/2017 Report) The parties now ask that the Court approve their proposed

settlement agreement (the "Agreement" (Doc. No. 18-1)) as "a reasonable compromise of

disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's

overreaching." *Le v. SITA Info. Networking Computing, USA, Inc.*, No. 07-CV-86 (JS), 2008

WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (internal quotation marks omitted); *see also Cheeks*

*v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) ("Stipulated dismissals settling FLSA claims with prejudice require the approval of the district court . . . .").

Under the FLSA, parties cannot settle claims without the approval of a district court or the Department of Labor. *Cheeks*, 796 F.3d at 206. The parties must satisfy the Court that their agreement is "fair and reasonable." *Flores v. Food Express Rego Park, Inc.*, No. 15-CV-1410 (KAM) (SMG), 2016 WL 386042, at *1 (E.D.N.Y. Feb. 1, 2016). Here, the parties have demonstrated that the Agreement "reflects a reasonable compromise over contested issues" and is fair and reasonable in all respects. *Johnson v. Brennan*, 10-CV-4712 (CM) 2011 U.S. Dist. LEXIS 105775 at *36 (S.D.N.Y. Sept. 16, 2011).

## DISCUSSION

I.     Settlement Amount

The parties represent in the Agreement that Pucciarelli and Isolda are receiving full compensation for the wages and liquidated damages to which they are entitled, and in a timelier manner than in the event of a trial. (Joint Mot. to Approve FLSA Settlement (Doc. No. 18) at 4.) Accordingly, the Court finds the total award to Pucciarelli and Isolda to be fair and reasonable.

II.     Attorney's Fees

Courts calculate reasonable attorney's fees either by determining the so-called "lodestar" amount or by awarding a percentage of the settlement. *See McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). The lodestar figure is the product of the attorney's reasonable hourly rate and the number of hours reasonably expended in the litigation. *See Millea v. Metro–N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). "Once that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on other less objective factors, such as the risk of the litigation and the performance of the attorneys."

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir.2000) (internal quotation marks and citation omitted). Under the percentage method, counsel is awarded a reasonable percentage of the total funds recovered in the action. *McDaniel*, 595 F.3d at 417. In accordance with common practice, the Court employs the lodestar method as a "crosscheck" on the percentage method. *Id.* at 50.

Both Pucciarelli and Isolda agreed to pay one-third of all funds recovered in the lawsuit to Pelton Graham LLC. (Joint Mot. to Approve FLSA Settlement at 4.) Here, the Agreement calls for fees in the amount of one-third of the settlement. (Agreement at 3.) "Courts in this Circuit have often approved requests for attorneys' fees amounting to 33.3% of a settlement fund." *See Karic v. Major Automotive Companies, Inc.*, 09 CV 5708 (CLP), 2016 WL 1745037 at *8 (E.D.N.Y. April 27, 2016) (citing cases). Therefore, based on the percentage method, the attorney's fees specified in the Agreement are reasonable.

The lodestar method confirms that conclusion. "Recent decisions in the Eastern District of New York have determined that reasonable hourly rates in FLSA cases are approximately $300–$450 for partners, $200–$325 for senior associates, $100–$200 for junior associates, and $60–80 for legal support staff." *Romero v. Westbury Jeep Chrysler Dodge, Inc.*, No. 15-CV-4145 (ADS) (SIL), 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016). In this case, plaintiffs' counsel billed for 67.57 hours of work at various hourly rates for a total lodestar of $21,623.22. (*See* Affidavit in Support of Settlement (Doc. No. 18-2) at Ex. A.) Thus, plaintiffs' counsel billed at an average rate of approximately $320 per hour.

When applying the lodestar method, courts generally "apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved." *In re Platinum & Palladium Commodities Litig.*, No. 10-CV-3617

(CCH), 2015 WL 4560206, at *3 (S.D.N.Y. July 7, 2015). A multiplier is also appropriate

where, as here, the "fee award will not only compensate them for time and effort already

expended, but for time that they will be required to spend administering the settlement going

forward." *Willix v. Healthfirst, Inc.*, No. 07-CV-1143 (ENV) (RER) 2011 U.S. Dist. LEXIS

21102 at *7 (E.D.N.Y. Feb. 18, 2011). Courts have routinely found that doubling the lodestar

yields a reasonable fee in the context of FLSA settlements. *See e.g. Hall v. Prosource Techs.,*

*LLC*, No. 14-cv-2502 (SIL) 2016 U.S. Dist. LEXIS 53791 at *53–55 (E.D.N.Y. Apr. 11, 2016)

("This award represents a 2.08 multiplier of the modified lodestar, which is reasonable in light of

the *Goldberger* factors, and is in line with other cases in the Second Circuit.); *Gattinella v.*

*Michael Kors (USA), Inc.*, No. 14-CV-5731 (WHP), 2016 U.S. Dist. LEXIS 20419 at *2

(S.D.N.Y. Feb. 9, 2016) (applying 1.94 lodestar multiplier); *Fujiwara v. Sushi Yasuda Ltd.*, 58 F.

Supp. 3d 424 (S.D.N.Y. Nov. 12, 2014) (holding that "a multiplier near 2 should, in most cases,

be sufficient compensation for the risk associated with contingent fees in FLSA cases," and

applying multiplier of 2.28 to the modified lodestar). Here, the Agreement calls for attorney's

fees that amount to a 1.31 multiplier of the loadstar – well below the multipliers found

reasonable in the Second Circuit. Accordingly, both the lodestar method and the percentage

method confirm that the billing rate in this case is reasonable.

The number of hours billed is reasonable, as well. Courts in this district have found fault

with billing practices due to, *inter alia*, vague time entries, time billed for unnecessary or

redundant tasks, block-billing (i.e., grouping multiple tasks into a single time entry), and over-

billing for travel time. *See, e.g., Marshall v. Deutsche Post DHL*, No. 13-CV-1471 (RJD)(JO),

2015 WL 5560541, at *11 (E.D.N.Y. Sept. 21, 2015) (reducing attorney's fees where counsel

submitted vague time entries and "the time entries submitted for the two most senior partners . . .

4

indicate[d] that they spent the majority of their time reviewing the work of other attorneys and conferring with each other," finding that "[t]his top heavy approach could have been reduced or avoided"); *Sheet Metal Workers' Nat. Pension Fund v. Coverex Corp. Risk Sols.*, No. 09-CV-0121 (SJF) (ARL), 2015 WL 3444896, at *12 (E.D.N.Y. May 28, 2015) ("[B]lock-billing makes it difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided."); *Flores*, 2016 WL 386042, at *3 (reducing attorney's fees where counsel "billed a not-insubstantial amount of travel time"). In this case, counsel submitted time entries explaining in sufficient detail the work that was done, billed only for time spent on critical tasks such as client communication and drafting the complaint, did not engage in block-billing for many hours of work at a time, and did not bill for any travel time whatsoever. (*See* Affidavit in Support of Settlement at Ex. A.) As a result, the Court finds that the amount of time billed is reasonable. Because the amount of time billed and the hourly rate are reasonable, the attorney's fees specified in the Agreement are reasonable.

III.    Release

The proposed settlement sets forth a release of claims by plaintiffs. (Agreement at 3–4.) Courts have rejected such unilateral general releases where the agreement "would 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues . . . .'" *Cheeks*, 796 F.3d at 206 (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)); *see also Panganiban v. Medex Diagnostic & Treatment Ctr., LLC*, No. 15-CV-2588 (AMD) ( LB), 2016 WL 927183, at *3 (E.D.N.Y. Mar. 7, 2016) ("[I]n the context of a typical FLSA case, an employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled.")

5

(internal quotation marks and alteration omitted). In other words, "an employer is not entitled to use an FLSA claim . . . to leverage a release from liability unconnected to the FLSA." *Camacho v. ESS-A-Bagel, Inc.*, No. 14-CV-2592 (LAK), 2014 WL 6985633 at *4 (S.D.N.Y. Dec. 11, 2014).

However, FLSA settlement releases "may include claims not presented and even those which could not have been presented, but only when the released conduct arises out of the identical factual predicate as the settled conduct." *Nights of Cabiria, LLC*, 96 F. Supp. 3d at 181 (internal quotation marks omitted). In other words, "a release is valid only insofar as it precludes future claims that arise from the same facts at issue in the class action (its goal being to prevent the parties from litigating the same issues again under a different legal theory)." *Souza v. 65 St. Marks Bistro*, 2015 U.S. Dist. LEXIS 151144 at *18 (S.D.N.Y. Nov. 6, 2015).

Here, the proposed release provides for:

> [F]ull accord and satisfaction of, any and all past and present matters, claims, demands, causes of action, and appeals of any kind, whether at common law, pursuant to statute, ordinance or regulation, and whether arising under federal, state, local or other applicable law, that are based upon federal, state or local laws governing minimum wage, overtime pay, wage payments, spread-of-hours payments, failure to pay for all hours worked, failure to provide wage statements and/or wage notices failure to keep appropriate timekeeping and payroll records, or otherwise arise out of or relate to the facts, acts, transactions, occurrence, events or omissions alleged in the Lawsuit or which could have been alleged in the Action.

Thus, while broad, the terms of the release are not "unconnected to the FLSA." *Camacho*, No. 14-CV-2592 (LAK), 2014 WL 6985633 at *4. Rather "the released conduct arises out of the identical factual predicate as the settled conduct," *Nights of Cabiria, LLC*, 96 F. Supp. 3d at 181, and it relates specifically to wage and hour issues without encompassing, for example, prospective discrimination claims. *See Cheeks*, 796 F.3d at 206; *c.f. Batres v. Valente Landscaping Inc.*, No. 14-CV-1434 (SIL), 2016 WL 4991595, at *3 (E.D.N.Y. Sept. 19, 2016) (declining to approve a settlement agreement that would release "claims arising under theories of

6

liability not alleged in the instant action"); *Francis v. Bowery Residents' Comm., Inc.*, No. 15-CV-7102 (RLE), 2016 WL 4120500, at *1 (S.D.N.Y. July 14, 2016) (holding that a release provision was overly broad where it required that the plaintiffs release claims "wholly unrelated to FLSA actions, including claims that arise under the Americans with Disabilities Act, contract claims, and tort claims"). Accordingly, the Agreement's proposed release is fair and reasonable.

IV.     Confidentiality

The Agreement contains a confidentiality provision which states:

> Plaintiffs agree that they will treat the existence and terms of this Agreement as confidential, and will not actively publish information about the existence or terms of this Agreement on social media, including, but not limited to Facebook. Nothing herein shall be construed to prevent Plaintiffs from discussing the existence or terms of this Agreement with: (i) Plaintiffs' respective spouses, who shall be instructed that the existence and terms of this Agreement are confidential; (ii) Plaintiffs' counsel and/or tax advisor, as necessary to seek professional services and/or advice; or (iii) any persons as required by compulsory legal process. Notwithstanding the above, the Parties acknowledge that, to the extent required to achieve dismissal of the Lawsuit, the Parties may disclose the existence and terms of the Agreement to the Court, and via public filing on the Court's ECF system, as may be required by the Court to terminate the lawsuit.

(Agreement at 5.) Highly restrictive confidentiality provisions are in tension with the remedial purpose of the FLSA. *See Cheeks,* 796 F.3d at 206. However, the FLSA imposes no *per se* bar on confidentiality provisions in settlement. Rather, the fairness of restrictions on the parties' ability to disclose details of a settlement depends on the particular circumstances of any given case. *See Lola v. Skadden, Arps*, No. 13-CV-5008 (RJS), 2016 U.S. Dist. LEXIS 12871 at *6 (S.D.N.Y. February 3, 2016) The Court finds that the confidentiality provision does not run afoul of the FLSA's remedial purposes. As the parties assert, the confidentiality provision is not highly restrictive because it pertains only to the Agreement, and the parties may disclose the existence and terms of the Agreement to their spouses, legal or financial advisers, and "via public filing on the Court's ECF system." (Agreement at 5.)

7

## CONCLUSION

For the foregoing reasons, the joint motion to approve the parties' settlement (Doc. No. 18) is granted.  The Clerk of Court is directed to close this case.

SO ORDERED.

s/Roslynn R. Mauskopf

ROSLYNN R. MAUSKOPF
United States District Judge

Dated: Brooklyn, New York
June 23 ,2017

8